Totten, J.
delivered the opinion of the court.
The bill in this case was filed on the 20th of February, in the circuit court of Decatur. There was a demurrer to the bill, and the plaintiff has appealed to this court; and it is here insisted that the circuit court, in virtue of the act of 1838, chap. 156, has concurrent jurisdiction with the court of chancery to entertain the bill and grant the relief prayed for.
It appears from the bill, that James Martin died intestate, leaving his widow and family of children, most of whom were minors,; and that Robert Keeton was duly appointed the guardian of the minors. After administration, á proceeding was had in said circuit court for a division of the estate, both real and personal, of said intestate, and it consisted of land, negroes, and other assets. A partition of the personalty was made by assigning to the infants aggregately their portion and *537 placing it in tlie hands of Keeton, their common guardian, and it is said now to consist of eight negro slaves and about two thousand dollars in funds. It is not stated at what time this division took place. In July, 1849, John Martin, one of said infants, died intestate, and, as we infer from the bill, without wife or issue. At December term of the county court of Decatur, Elijah Taylor, the plaintiff, was appointed his administrator.
It further appears that the land which the children of James Martin held by heirship, was sold for division, in pursuance of a decree of said circuit court, the sale being for four hundred and seventy-five dollars, in which the said infants and other children have a common interest, no division of the land fund having been made. The sale of the land was before the death of- the infant, John Martin, plaintiff’s intestate. The wards of Robert Keeton are made parties to this bill, but the other children of James Martin, the intestate, are not made parties. The bill prays a partition of the eight negroes and the two thousand dollar fund in the hands of the guardian, Robert Keeton, so as to assign to the plaintiff, as administrator of John Martin, one-seventh part thereof, and oí the four hundred and seventy-five dollars, the proceeds of the sale of the land, claiming in the same right one-eleventh part thereof.
Now, has the circuit court jurisdiction upon this state of facts? It has no chancery jurisdiction, except what has been conferred upon it by statute.. The act of 1835. ch. 20, gives to the chancery court exclusive jurisdiction of all cases in equity, except in the cases there stated, and this is not one of the excepted cases. Nor do we think that this case comes within the provisions of the -act of 1838, chap. 158, which is in these words; *538 “The circuit courts shall have concurrent jurisdiction with the chancery courts, of all cases of petitions or bills for the division of slaves and other personal property, and shall decree accordingly.”
This is not properly and merely a bill for partition, as the plaintiff represents the rights of a deceased ward, and is seeking, in the first place, an account with the guardian. . This account may and probably will involve many equitable considerations, of which the circuit court would be wholly unable to take cognizance, as for instance, the hire and management of the slaves, the interest and management of the two thousand dollar fund, the guardian’s account for the maintenance and education of the ward, and his liability for misconduct, if any, connected with his duties as trustee.
The settlement of the account with the guardian is a prerequisite to any partition or division of the estate, because such settlement is indispensible to show the amount of the estate and of what it consists. It will not be insisted that the circuit court has any power or jurisdiction to settle and adjust the equitable matters of account between a guardian and his ward; this jurisdiction belongs peculiarly and appropriately to a court of chancery. See 2 Kent’s Com. 188, and cases there cited.
In the next place, the bill seeks to recover the interest which the deceased infant had in the proceeds of the sale of the land, being an interest in common with all the children of James Martin, and we have seen that all of those children are not parties to this bill, but only those named as the wards of Robert Keeton. If the plaintiff, as administrator, has any interest in the funds, it would be necessary in a suit to recover it to make *539 all the other children, who are interested in the funds, parties to the suit.
It does not appear what direction the circuit court gave as to the interest of the minors in the fund created by the sale of the land. The act of 1827, chap. 54, which confers 'power on that court to decree such sale, requires that it shall also direct the manner in which it shall be ■invested, as in land or otherwise, as the interest of the minor may require. It is not to be presumed that the court omitted to give any directions in this respect. It is evident that if the fund thus arising, of those infants, was ordered to be invested in land, it will be considered, in equity, as realty. But if no directions were given by the circuit court as to the disposition of the land fund, yet' the question arises, whether the interest of the deceased infant will not be considered as realty and goto his heirs, and not to his personal representatives.
The court of chancery has power, without the aid of act of 1827, ch. 54, to change the nature of the infant’s property, as real into personal, and personal into real, where his interest manifestly demands it. But it is said the court has'* regard to the circumstance that the heirs and representatives of the infant may be affected thereby, in case of his death during minority. It also has regard to the rights and powers of the infant over his personal property; as, for instance, the power of disposition by will, and some other modes. And, therefore, in ex parte Phillips, 19 Ves. 123, it is said, “that in the case of the infant, it is settled that, as a trustee out of court cannot change the nature of the property, so the court, which is only a trustee, must act as a trustee out of court;' and finding that a change will be for the benefit of the infant, must so deal with it as not to affect the powers *540 of the infant over his property, even during his infancy. In view of these considerations, it is held to be the constant rule of courts of equity, to hold land purchased by the guardian with the infant’s personal estate, to be personal estate; and, on the other hand, to hold land turned into money to be real estate. See Story’s Eq. sec. 1357; 1 Mad. Ch. 339, and cases there cited; Mills vs. Dennis, 3 J. C. R. 370.
We do not intend to express any opinion in the present case, as to the character of the fund, or who will be entitled to it. We have said enough to show, and that was our only object, that it is a question proper to be disposed of in a court of chancery, and that the act of 1838, ch. 156, or any other act, does not enable the circuit court to take jurisdiction of it.
We therefore think there is no error in the decree, and order it to be affirmed.